■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v TARRENCE K. ASH, Appellant. [594 NYS2d 366] —Harvey, J. Appeal from a judgment of the County Court of Greene County (Battisti, Jr., J.), rendered April 25, 1991, upon a verdict convicting defendant of the crimes of criminal possession of a controlled substance in the first degree and prohibitions on the use and possession of firearms.

On July 31, 1989, defendant and two acquaintances, William Powell and Willie Wynn, were traveling on the Thruway en route to Rochester when their vehicle struck a tree several miles south of exit 21 at approximately 6:15 A.M. A passing motorist, Ralph Hoag, offered his assistance. Defendant accepted this offer and climbed into the open flat bed of Hoag's pickup truck after loading his possessions there while Powell and Wynn rode in front with Hoag. Hoag then proceeded to drive the three men from the accident vehicle to Thruway exit 21 in order to inform the police about the accident and possibly get medical attention for his passengers. After reaching the toll plaza, however, Hoag's pickup truck was pulled over by State Trooper Miguel Vega who had been alerted that three black males involved in a one-car collision had left the scene in a truck driven by a white male. After asking some questions of Hoag and observing that two of Hoag's passengers needed medical attention, Vega indicated that he would take defendant and his companions to the hospital. Defendant then climbed out of the truck, removed a large radio and a child's stroller from Hoag's truck and placed the items in the back of Vega's patrol vehicle. After Hoag pointed out to Vega that

there were still some objects left in his truck, Vega went over and saw a gun-butt protruding from beneath a pink blanket. After defendant admitted in response to questioning by Vega that the shotgun belonged to him and was loaded, Vega eventually placed defendant, Powell and Wynn under arrest. Another State Trooper who arrived at the scene searched defendant's stroller and found slightly more than four ounces of cocaine in a plastic bag.

Subsequently, defendant was indicted for criminal possession of a controlled substance in the first degree and prohibitions on the use and unauthorized possession of a loaded firearm (ECL 11-0931 [2]). Defendant's pretrial motion to, *inter alia,* suppress statements he made at the arrest site was denied following hearings on the motion. Following a jury trial, defendant was convicted of both counts as charged. Defendant was sentenced to 15 years to life in prison on the controlled substance count and a definite term of three months on the firearm count, both to be served concurrently. This appeal by defendant followed.

Initially, we reject defendant's contention that County Court should have suppressed the statements he made to Vega pertaining to the shotgun because he was in custody and under arrest at the time and had not been advised of his *Miranda* rights *(see, Miranda v Arizona,* 384 US 436). In determining whether a defendant was in custody prior to being read his or her *Miranda* rights, the test is whether a reasonable person, innocent of any crime, would have thought that he or she was in custody *(see, People v Murphy,* 188 AD2d 742; *People v Bell,* 182 AD2d 858, 859, *lv denied* 80 NY2d 927). Upon examination of the suppression testimony presented on this issue, we conclude that no error was made by County Court.

Significantly, Vega testified at length as to what occurred. He stated that he stopped Hoag's vehicle after receiving information that men meeting the general description of Hoag's passengers left the scene of an accident and were possibly injured. When he approached Hoag to inquire about the situation, Hoag affirmed that his passengers were the ones who had been in an accident and he was going to take them to the hospital. Vega indicated to the passengers that because the accident had occurred on the Thruway, it was his duty to investigate and, if any of the accident victims required medical attention, he would transport them to the hospital. Around that time Vega observed that one or more of the men appeared to have visible injuries and he asked them to exit

Hoag's vehicle and enter his police cruiser. Notably, in response to questioning at the suppression hearing, Vega stated that if the men had actually declined seeking medical attention they would have been free to go once an accident report was filled out. Vega testified that at this time he had no suspicions about the passengers and was more concerned with getting Hoag's address for the purpose of his being commended for being a good samaritan. Corroborative of this assertion is the fact that it was Hoag, not Vega, who noticed the shotgun in his truck. Once Vega saw the shotgun he was obviously put on alert to a potential problem, but he still would not have been sure about criminal activity because carrying an unloaded shotgun is perfectly legal. Significantly, although Vega was apparently unsure at the suppression hearing about whether he asked who owned the shotgun and if it was loaded before or after he ascertained for himself that it was loaded, the issue is not dispositive of whether Vega's questions were custodial in nature.

Assuming, as did County Court, that Vega knew the shotgun was loaded before he asked these questions, he was then in possession of objective facts sufficient to support a reasonable suspicion to briefly detain and question defendant (see, People v Bennett, 70 NY2d 891, 893). Vega's conduct at that point did not restrain defendant's freedom of movement to the degree associated with a formal arrest (see, People v Coates, 157 AD2d 843, 844). Once defendant made the incriminating replies to Vega's inquiries, there then existed probable cause for the warrantless arrest of defendant (see, People v Bennett, supra). Consequently, we conclude that defendant's suppression motion on this issue was properly denied.

Turning to defendant's challenges to the jury charge we find that County Court did not err in refusing to give an accomplice charge with respect to the testimony of Powell and Wynn (see, CPL 60.22). Defendant points out that, even though these charges were later dropped, both Powell and Wynn were at one point each charged with criminal sale of a controlled substance in the first degree and, therefore, County Court improperly denied his request for an accomplice charge. We disagree. There can be little question that in light of the undisputed evidence at trial Powell and Wynn were not accomplices as a matter of law (see, People v Gerenstein, 179 AD2d 930, 933, lv denied 79 NY2d 1049). As to the question of whether their status as possible accomplices was a factual issue that should have been submitted to the jury (see, supra), we are not persuaded. While the fact that individuals were

charged with crimes is certainly relevant to the issue of whether they were accomplices, this factor is by no means conclusive (see, People v Berger, 52 NY2d 214, 219; People v Pagan, 105 AD2d 810). More pertinent is the question of whether, in accordance with the statute, "a witness in a criminal action who, according to evidence adduced in such action, may reasonably be considered to have participated in * * * [t]he offense charged; or * * * [a]n offense based on the same or some of the same facts or conduct which constitute the offense charged" (CPL 60.22 [2] [a], [b] [emphasis supplied]; see, People v Basch, 36 NY2d 154, 157).

Here, there was virtually no proof or evidence brought forth at trial that could allow a jury to infer that Wynn and Powell participated in the crimes charged (see, People v Gerenstein, supra; People v Sherman, 156 AD2d 889, 891, lv denied 75 NY2d 970; People v Wood, 94 AD2d 849). Defendant did not testify at trial and the other witnesses present did not present any evidence that tied Wynn or Powell to possession or knowledge of the gun or the cocaine that was found in defendant's stroller. Moreover, the testimony of Wynn and Powell did not provide enough evidence to reasonably infer their participation in the charged crimes. Instead, the testimony almost uniformly indicated that Wynn and Powell were just acquaintances of defendant who were catching a ride to New York City with defendant. The witnesses all testified that defendant did most of the talking to Hoag and Vega. Further, he always acted as if the relevant possessions in Hoag's truck were his alone. Accordingly, we do not find any reversible error in County Court's ruling.

Finally, defendant asserts that County Court committed reversible error in giving the jury a "no unfavorable inference" charge regarding defendant's decision not to testify. At trial, defense counsel objected after the conclusion of the charge to the inclusion of this instruction. Preliminarily, we note that there is some question from the record over whether defense counsel implicitly acquiesced to this charge at the precharge conference. In any event, assuming that no request was made, we find that any error in including it was harmless given the overwhelming proof at trial of defendant's guilt (see, People v Baker, 153 AD2d 865, lv denied 74 NY2d 894; People v Vereen, 57 AD2d 768, affd 45 NY2d 856). This is especially true because, despite defendant's contentions otherwise, we find that County Court's charge was consistent with the tone of the rest of the charge; the court did not place undue emphasis on the language of the charge relating to defen-

dant's decision not to testify and the charge was not prejudicially lengthy or inconsistent with the intent of CPL 300.10 (2) *(see, People v Baker, supra; People v Gonzalez,* 72 AD2d 508).

Mikoll, J. P., Yesawich Jr., Mercure and Crew III, JJ., concur. Ordered that the judgment is affirmed.